*Southern District*
No. 71
**EDWARD BERUBE**
v.
**RAYMOND FONTAINE**

Argued: Jan. 31, 1974 - Decided: May 23, 1974

*Present:* Murphy, P.J., Lee, & Rider, JJ.
Case tried to *Silva, J.* in the Second District
   Court of Bristol. No. 36602.

**Rider, J.** This is an action of contract to
recover $1,500.00 as a broker's commission for
finding a buyer ready, willing and able to buy
certain property owned by the defendant, after
the defendant had engaged the plaintiff as ex-
clusive broker to sell the property.

The answer is a general denial, denial of
genuiness of any signature, denial of any
agreement, and breach by the plaintiff of any
alleged agreement.

The court found for the defendant.

At the trial there was evidence tending to show that:

The plaintiff is a licensed real estate broker in the Commonwealth of Massachusetts.

Sometime during the summer of 1970, the defendant contacted the plaintiff relative to the sale of property owned by the defendant and known as 481 Briggs Road, Westport, Massachusetts. Thereafter, the plaintiff attempted for several months to sell the property on behalf of the defendant. The defendant then placed the house with a different broker for sale, but no sale was effectuated.

In July of 1971, the defendant and the plaintiff entered into an exclusive brokerage agreement for a period of 180 days, and agreed to pay the plaintiff a commission of $1,500.00 if the property was sold for $36,000.00. On the day said agreement was to expire, the plaintiff had not been able to procure a buyer, but was then discussing the matter with a prospective buyer who had indicated an interest in purchasing.

On January 13, 1972 the plaintiff and the defendant entered into an additional exclusive brokerage agreement, under which the defendant granted to the plaintiff the exclusive right to sell the property at 481 Briggs Road, which agreement was to expire on January 17, 1972. This agreement provided for a commission to the plaintiff of $1,500.00 if the purchase price were $35,500.00 or a $1,000.00 commission if the purchase price were $35,000.00.

On January 13, 1972 the plaintiff received from one Theodore Bernat a $1,000.00 check as a deposit on a purchase of the property of the defendant for $35,500.00. On January 14, 1972, said Theodore Bernat and his wife, Margaret Bernat, signed a Purchase and Sale Agreement agreeing to purchase the property of the defendant for $35,500.00. Bernat was ready, willing and able to purchase the property at that time for the agreed price of $35,500.00, and in fact shortly after the defendant refused to sign the Agreement and purchase another home for $38,500.00 on which he obtained a $34,000.00 mortgage. He made no tender of payment to the defendant before January 18, 1972.

The plaintiff came to see the defendant on January 15, 1972 when he was in his barn putting his cows in their stalls, and the plaintiff then told him he had sold his house and had a check as a deposit. The plaintiff asked him to sign an Agreement, and the defendant refused stating that he wanted his wife to read it since he could not read. The plaintiff said he was a very busy man and that either the defendant would sign the Agreement now or forget it. The defendant never was shown the Purchase and Sale Agreement. Plaintiff told him he had sold the house and got what he wanted. The defendant never did sign the Purchase and Sale Agreement. He also refused to go through with any sale of the property to Mr. and Mrs. Bernat.

The defendant had attended school through the ninth grade, and had thereafter attended Westport Agricultural School, but not graduated.

At the close of the evidence and before the final arguments, the plaintiff made the following requests for rulings:

1. On all of the evidence a finding for the plaintiff is requested.

2. On all of the evidence a finding for the plaintiff is warranted.

3. A broker given an exclusive right to sell for a given period of time who produces a buyer within that time ready, willing and able to purchase at the agreed-upon price is entitled to a commission even though the Seller refused to complete the transaction.

4. A broker given an exclusive right to sell for a given period of time who produces a buyer within that time ready, willing and able to purchase at the agreed-upon price is entitled to a commission even though the seller refused to sign a purchase and sale agreement embodying those terms.

5. The date upon which a broker has earned his commission under an exclusive right to sell is the date on which he procures the buyer, not the date on which the seller is notified or the date on which a deposit is made.

The court denied plaintiff's request for ruling # 1, and allowed requests # 2, 3, 4 and 5.

The court found the following facts:

"I find that the defendant entered into an exclusive agreement with the plaintiff for the sale of the defendant's home; that on the 15th of January, 1972, two days before agreement was to expire, the plaintiff visited the defendant at his barn with an agreement of sale; that the defendant refused to sign the contract as he is illiterate and wanted his wife to read it; that the plaintiff refused to return or accompany the defendant to his home, so that his wife could read the contract; that subsequently the defendant called the plaintiff with regard to completing the agreement but was advised that it was "too late"; that at no time did the defendant refuse to sell said real estate; that the sale was not consummated as a result of the plaintiff's refusal to allow the defendant to seek counsel and advice before signing an agreement."

The plaintiff filed a motion to correct inconsistencies which was denied. In denying the plaintiff's motion the court further stated:

"Requests numbered 3, 4 and 5 were allowed as stating correct statement of law, but I find that while the plaintiff produced a buyer, the Defendant was never given an opportunity to determine whether said buyer was ready, willing and able to purchase on the seller's terms."

This report contains all the evidence material to the questions reported.

The plaintiff claims to be aggrieved by the finding of the trial justice which is inconsistent with his allowance of the plaintiff's requests for rulings Nos. 3, 4 and 5.

There was no prejudicial error.

Plaintiff's requests for rulings Nos. 3 and 4 are incomplete, and therefore incorrect statements of the law and should not have been granted. It is now firmly established that "although a broker who has procured a customer is not obliged to see that the owner and the customer enter into a binding contract or that the contract, if one is made, is carried out, nevertheless, if no such contract is made, the broker suing for his commission has the burden of proving that his customer was ready, willing and able to buy *on the owner's terms.*" (Underlining added). *Gaynor* v. *Laverdure,* 1973 Mass. Adv. Shs. 111, 115, and cases cited. Plaintiff's requests imply that the "agreed-upon price" is synonymous with the "owner's terms". We do not agree. There was no reported evidence that anyone knew the details of th owner's terms, which must have been fulfilled for the plaintiff to prevail. *Elliott* v. *Kazajian,* 255 Mass. 459; *Goldman* v. *Goodman,* 265 Mass. 347.

Furthermore, the trial justice made the special finding that "the Defendant was never given an opportunity to determine whether said buyer was ready, willing and able to purchase on the seller's terms". The trial jus-

tice's general and special findings are to stand if warranted upon any possible view of the evidence. *Caton* v. *Winslow Bros. & Smith Co.,* 309 Mass. 151, 154; *Piekos* v. *Bachand,* 333 Mass. 211, 213; *M. DeMatteo Construction Co.* v. *Commonwealth,* 338 Mass. 568, 572. The findings of fact made by the trial justice on oral evidence are final. *Butler* v. *Cromartie,* 339 Mass. 4; *Huikari* v. *Eastman,* 1972 Mass. Adv. Shs. 1339.

It is difficult to understand why the plaintiff refused to return or to accompany the defendant to his house so that his wife could read the agreement of sale. Such a request is by no means infrequent, and the careful owner will in addition seek the advice of counsel prior to the execution of such an agreement. It is particularly incomprehensible in this instance where the defendant was not shown the agreement and, furthermore, was found by the trial judge to be illiterate. The plaintiff was bound to exercise the utmost good faith in his dealings with the defendant. *Veasey* v. *Carson,* 177 Mass. 117, 120; *Little* v. *Phipps,* 208 Mass. 331, 333. The evidence of plaintiff's conduct clearly indicates that he did not sustain his burden of proof. *Gaynor* v. *Laverdure* (supra).

If the general finding for the defendant created an inconsistency with the action of the action of the trial judge in allowing plaintiff's requests for rulings Nos. 3 and 4 — and we think it did — the matter was properly

brought to his attention by plaintiff's motion to correct inconsistencies. *Biggs* v. *Densmore,* 323 Mass. 106, 108-109; *Vieira* v. *Balsamo,* 328 Mass. 37, 39. At this point the trial justice should have corrected his rulings to conform to his findings. *Raytheon Manufacturing Company* v. *Indemnity Insurance Company of North America,* 333 Mass. 746, 749. However, from a reading of the special findings of the trial justice we are satisfied that his finding for the defendant was not due to the application of incorrect principles of law, and that his error in ruling favorably upon these requests was harmless and would not vitiate the decision. *Brodeur* v. *Seymour,* 315 Mass. 527, 529-530. *Fibre Leather Mfg. Corp.* v. *Ramsay Mills, Inc.,* 329 Mass. 575, 577; *Gustafson* v. *Metropolitan Transit Authority,* 333 Mass. 769.

Plaintiff's request for ruling No. 5 could have been denied as immaterial. In any event, it did not require a finding for the plaintiff and its allowance was harmless. *Daniel* v. *Jardin,* 320 Mass. 764.

The record discloses ample evidence to justify the finding for the defendant. Such a finding imports a further finding of all the subsidiary facts and the drawing of all rational inferences essential to that conclusion. This finding must stand if permissible upon any reasonable view of the evidence or unless it is plainly wrong. We cannot say that the judge's view of the evidence was unreasonable

or that the finding was plainly wrong on the record before us. *Moss* v. *Old Colony Trust Company,* 246 Mass. 139, 143; *Kennedy Bros. Inc.* v. *Bird,* 287 Mass. 477, 484; *Joseph Zaleski* v. *Laura R. Zaleski,* 330 Mass. 132.

Report dismissed.